# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19-22043-Civ-WILLIAMS/TORRES

ATLANTIC CASUALTY INSURANCE CO,

     Plaintiff,

v.

LEGACY ROOFING OF FL/AHEAD GENERAL
CONTRACTORS & RESTORATION, LLC
RIVAS FAMILY ENTERPRISES, INC. and
DEPENDABLE WAREHOUSING & DISTRIBUTION, INC.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Atlantic Casualty Insurance Co.'s ("Plaintiff" or "Atlantic") motion for summary judgment against Rivas Family Enterprises, Inc., and Dependable Warehousing & Distribution, Inc. (collectively, "Defendants"). [D.E. 36]. Defendants responded to Atlantic motion on January 23, 2020 [D.E. 37] to which Atlantic replied on January 30, 2020. [D.E. 38]. Therefore, Atlantic's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Atlantic's motion should be **GRANTED**.[1]

_____

[1] On January 30, 2020, the Honorable Kathleen Williams referred Plaintiff's motions for summary judgment to the undersigned Magistrate Judge. [D.E. 39].

## I.  BACKGROUND

On June 30, 2015, Defendants filed an action in Florida state court against Atlantic's insured – Legacy Roofing of FL/Ahead General Contractors & Restoration, LLC ("Legacy") – seeking damages resulting from the installation of a roofing sealant.  Defendants allege that Legacy installed a sealant that began "eating away" at a commercial roof.  [D.E. 1-1 at 6].  Therefore, Defendant filed a single count of negligence against Legacy, alleging improper installation of the roofing sealant and seeking damages for a roof replacement.

Based on these allegations, Atlantic agreed to defend Legacy pursuant to a reservation of rights clause included in an insurance policy.[2]  This clause reserved Atlantic's right to seek reimbursement from Legacy of all fees and costs incurred in defense of the state court action if it was later determined that no coverage existed under the relevant insurance policy.  On May 21, 2019, Atlantic filed this action seeking a declaratory judgment, arguing that no coverage existed under the policy for the claims presented in the underlying state court action.  And because no coverage exists, Atlantic concludes that summary judgment should be granted and that it should be entitled to the reimbursement of all fees and costs incurred in defending Legacy.

---

[2]    Atlantic issued a Commercial General Liability Policy to Legacy as the named insured with a policy period from March 17, 2009 to March 17, 2010.  [D.E. 1-4].  The policy includes coverage for "bodily injury" and "property damage" caused by an "occurrence" and promises to defend the insured subject to certain conditions.

## II.  APPLICABLE PRINCIPLES AND LAW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

 In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323B24 (1986).  The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies,

are implausible.  *See Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  In making this determination, the Court must decide which issues are material.  A material fact is one that might affect the outcome of the case.  *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  "Summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.   ANALYSIS

Atlantic seeks summary judgment on the question of whether it has a duty to defend and indemnify Legacy in an ongoing state court action.  Before we turn to the merits, we must consider the general principles governing the interpretation of insurance contracts, including the duty to defend and the duty to indemnify under Florida law.  These principles are necessary, as they will inform the analysis that follows.

### A.   *General Principles of Insurance Contracts*

 "Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of

such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). The interpretation of an insurance contract – including the question of whether an insurance provision is ambiguous – is a question of law to be determined by the court. *See id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

In addition, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972)); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties.").

However, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452, at *4 (citing *Purrelli v. State Farm Fire & Cas.*

*Co.,* 698 So. 2d 618, 620 (Fla. 2d DCA 1997)). Where an interpretation "involve[s] exclusions to insurance contracts, the rule is even clearer in favor of strict construction against the insurer: exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 412 F.3d 1224, 1228 (11th Cir. 2005) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So. 2d 1245, 1248 (Fla. 1986)). An insurance policy must, of course, be ambiguous before it is subject to these rules. *See Taurus Holdings, Inc.*, 913 So. 2d at 532 ("Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous."). An ambiguous policy must, for example, have a genuine inconsistency, uncertainty, or ambiguity in meaning after the court has applied the ordinary rules of construction. *See Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.,*711 So. 2d 1135 (Fla. 1998). "Just because an operative term is not defined, it does not necessarily mean that the term is ambiguous." *Amerisure Mut. Ins. Co. v. Am. Cutting & Drilling Co.*, 2009 WL 700246, at *4 (S.D. Fla. Mar. 17, 2009) (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 161, 166 (Fla. 2003)).

On the other hand, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Hagen v. Aetna Cas. & Sur. Co.,* 675 So. 2d 963, 965 (Fla. 5th DCA 1996). Ultimately "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the

6

contract, without resort to extrinsic evidence." *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001) (quoting *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993)).

When the parties dispute coverage and exclusions under a policy, a burden-shifting framework applies. "A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy[,] and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose from a cause that is excepted from the policy." *U.S. Liab. Ins. Co. v. Bove,* 347 So. 2d 678, 680 (Fla. 3d DCA 1977) (alteration added; citations omitted). If the insurer is able to establish that an exclusion applies, the then burden shifts back to the insured to prove an exception to the exclusion. *See id.*; *see also IDC Const., LLC. v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1348 (S.D. Fla. 2004) ("When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations in the complaint are cast solely and entirely within the policy exclusions and are subject to no other reasonable interpretation."). That is, "if there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion." *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005) (citing *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997)).

### B.    ***The Duty to Defend***

Under Florida law, an insurer's duty to defend is triggered if the allegations of a complaint brought against the insured fall within the scope of the insurer's

duty.  *See Higgins v. State Farm Fire & Cas. Co.,* 894 So. 2d 5, 9–10 (Fla. 2004) (citations omitted).  A court generally looks no further than to the terms of the insurance policy and the allegations of the underlying complaint brought against the insured to determine if the duty to defend is triggered.  *See id.*  "If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit."  *MJCM, Inc. v. Hartford Cas. Ins. Co.,* 2010 WL 1949585, at *4 (M.D. Fla. May 14, 2010) (citing *Battisti v. Continental Cas. Co.,* 406 F.2d 1318, 1321 (5th Cir. 1969)); *see also Grissom v. Commercial Union Ins. Co.,* 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992) ("All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured.  So long as the complaint alleges facts that create potential coverage under the policy, the insurer must defend the suit.").  To put it simply, the duty to defend "depends solely on the allegations in the complaint filed against the insured."  *Trizec Properties, Inc. v. Biltmore Const. Co.*, 767 F.2d 810, 811 (11th Cir. 1985) (citing *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.,* 357 So. 2d 253, 256 (Fla. 3d DCA 1978); *Coblentz v. American Surety Co.,* 416 F.2d 1059, 1062 (5th Cir. 1969)).

As with any other insurance policy, "[d]oubts as to whether a duty to defend exists are resolved in favor of the insured, and exclusionary clauses in insurance contracts are to be construed liberally in favor of the insured."  *Id.* at *5 (citing *Trizec Properties, Inc.*, 767 F.2d at 812).  This means that "an insurer must defend a lawsuit against its insured if the underlying complaint, when fairly read, alleges

facts which create potential coverage under [the] policy." *McCreary v. Fla. Res. Prop. & Cas. Joint Underwriting Ass'n,* 758 So. 2d 692, 695 (Fla. 4th DCA 1999) (citing *Fun Spree Vacations, Inc. v. Orion Ins. Co.,* 659 So. 2d 419, 421 (Fla. 3d DCA 1995)); *see also Essex Ins. Co. v. Big Top of Tampa, Inc.,* 53 So. 3d 1220, 1223 (Fla. 2d DCA 2011) ("A liability insurer has no duty to defend a suit where the complaint on its face alleges facts which fail to bring the case within the coverage of the policy." (citing *Auto–Owners Ins. Co. v. Marvin Dev. Corp.,* 805 So. 2d 888, 891 (Fla. 2d DCA 2001)).  However, "[w]here the complaint's allegations show either that a policy exclusion applies or that no coverage exists, no duty to defend arises." *Kenneth Cole Prods., Inc. v. Mid-Continent Cas. Co.,* 763 F. Supp. 2d 1331, 1334 (S.D. Fla. 2010) (citing *Federal Ins. v. Applestein,* 377 So. 2d 229, 232 (Fla. 3d DCA 1979)).

### C.   *The Duty to Indemnify*

"An insurer's duty to indemnify is narrower than its duty to defend and must be determined by analyzing the policy coverages in light of the actual facts in the underlying case." *Sinni v. Scottsdale Insurance Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2010) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n.3 (Fla. 1998); *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)).  That is, in contrast to the duty to defend, the duty to indemnify is dependent upon the entry of a final judgment, a settlement, or a final resolution of the underlying claims by some other means.  *See Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (citing *Travelers Ins. Co. v. Waltham*

*Indus. Lab. Corp.*, 883 F.2d 1092, 1099 (1st Cir. 1989); *Beaudette, Inc. v. Sentry Ins.*, 94 F. Supp. 2d 77, 100 (D. Mass. 1999)).

Unless the insured can demonstrate that it suffered a covered loss under the policy, the insurer has no duty to indemnify. *See Northland Cas. Co.*, 160 F. Supp. 2d at 1360 (citing *Matter of Celotex Corp.*, 152 B.R. 661, 666 (Bankr. M.D. Fla. 1993)). "[W]hereas the duty to defend is measured by the allegations of the underlying complaint, the duty to indemnify is measured by the facts as they unfold at trial or are inherent in the settlement agreement." *Northland Cas. Co.*, 160 F. Supp. 2d at 1360 (citation and quotation marks omitted). An insurer's duty to indemnify is therefore dependent on the outcome of a case, meaning any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim. "The only exception to this general rule is if the court can determine that the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify." *Northland Cas. Co.*, 160 F. Supp. 2d at 1360 (citing *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 430-31 (E.D. Pa. 1999)). "In such a situation, the court could adequately assess the duty to indemnify prior to a conclusion on the merits of the underlying litigation." *Id.*

Given that the duty to defend is broader than the duty to indemnify, *Tropical Park, Inc.*, 357 So. 2d at 256, an insurer has no duty to indemnify if there is no duty to defend. *See Clarendon Nat'l Ins. Co. v. Vickers*, 2006 WL 8434796, at *3 (S.D. Fla. May 25, 2006) (collecting cases). Stated differently, "'a court's determination

that the insurer has no duty to defend *requires* a finding that there is no duty to indemnify.'" *Mt. Hawley Ins. Co. v. Miami River Pt. Terminal, LLC*, 228 F. Supp. 3d 1313, 1326 (S.D. Fla. 2017) (emphasis in original) (quoting *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011)). With these principles in mind, we turn to the merits.

### D. *Atlantic's Motion for Summary Judgment*

Having set forth the relevant legal principles, Plaintiff argues that summary judgment should be granted in this case because the alleged property damage did not take place during the policy period from March 17, 2009 to March 17, 2010. Plaintiff claims that Legacy could not have started on the roofing project until after March 29, 2010, that the installation was completed in August 2010, and that damage to the roof was observed in January 2011 (or later). Defendants' response is that it had several business conversations with Legacy during the policy period and that Legacy made the decision to use an incompatible roofing product before the policy lapsed. Defendants contend, for example, that Legacy sent them a document in either January or February 2010 that detailed the scope of the work to be performed and a business license as evidence that Legacy was in good standing as a licensed contractor. Defendants then clarify that the Legacy's negligence does not merely involve the physical installation of the roof coating itself, but also the planning stage where Legacy should have determined that the roof coating was incompatible with commercial buildings. Defendants therefore reason that there are genuine issues of fact that preclude the entry of summary judgment on both the

duty to defend and the duty to indemnify because Legacy's negligent acts took place during the policy period.  We will consider each argument in turn.

### 1. *Whether Atlantic has a Duty to Defend*

We begin with the question of whether Atlantic has a duty to defend.  The underlying insurance policy provides that "insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' occurs during the policy period."  [D.E. 1-4 at 21].   The policy defines "property damage" as including one of the four enumerated categories:

a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

c.   "Property Damage" does not include any cost or expense to repair, replace, or complete any work to any property that you (or any insured) are otherwise obligated to repair, replace or complete pursuant to the terms of any contract with any person.

d.   We may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a lawsuit is seeking "Property damage."

[D.E. 1-4 at 35, 48].

Atlantic argues that the policy language forecloses any duty to defend because – irrespective of whether Legacy and Defendants began discussions about the anticipated work to be performed on the roofing project during the policy period – Defendants suffered no harm during the policy period that ran from March 17,

2009 to March 17, 2010.  Atlantic relies, in part, on the deposition testimony of Antonio Rivas (a plaintiff in the state court action) who testified that Legacy did not even begin any work until *after* a "Notice of Commencement" was signed on March 29, 2010:

> Q:  Sir, if you can explain to me what that document is, if that's your billing,
> A:  The commencement.
> Q:  And did you sign that document?
> A:  Yes.
> Q:  After signing this document, did [Legacy] then initially begin to work?
> A:  Yes.

[D.E. 35-1].  Mr. Rivas further testified that Legacy's work was completed sometime around August 2010 and that he noticed a problem with the roofing project in January 2011:

> Q:  So it looks like, based on the work orders and the notice of commencement, I think this product is applied and finalized sometime in - - would you agree, August 2010-ish?
> A:  Somewhere in that area.
> Q:  Does that sound about right?
> A:  That sounds about right.
> Q:  How soon after that do you realize there's a problem?
> A:  I think it was January 2011, a few months after that.

[D.E. 35-1 at 72].

Although Atlantic concedes that the state court complaint makes no mention of *when* the alleged damage took place, Atlantic maintains that the evidence in the underlying state court case makes clear that it occurred many months after the policy period expired.  Atlantic also asserts that the policy itself contains a provision that allows for the consideration of extrinsic evidence in determining whether there

is a duty to defend and that Defendants can point to nothing that shows that the damages occurred during the policy period.  [D.E. 1-4 at 45] ("Our determination regarding a defense obligation under this policy may be made on evidence or information extrinsic to any complaint or pleading presented to us.").

To put it simply, while the duty to defend is generally "controlled by the allegations in the complaint against the insured," *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n.3 (Fla. 1998), Atlantic reasons that the duty to defend is a statutory and contractual construction, and that parties can, in some circumstances, qualify that duty depending on the language of a contract:

> Since the duty to defend is a purely contractual obligation, however, parties to an insurance contract may modify the duty to defend.  *See Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 117 (2d Cir. 2005). They may, for instance, agree that extrinsic evidence may be considered in an examination of the duty to defend.  *Pendergest–Holt v. Certain Underwriters at Lloyd's of London,* 600 F.3d 562, 574 (5th Cir. 2010) (parties to insurance contract could modify eight-corners rule and permit consideration of extrinsic evidence).  Because the Policy expressly contemplates that extrinsic evidence will be considered, extrinsic evidence may be used in assessing Atlantic Casualty's duty to defend.

*Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 252–53 (S.D.N.Y. 2013), *aff'd Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013); *see also Argonaut Ins. Co. v. Maryland Casualty Co.,* 372 So. 2d 960, 963 (Fla. 3d DCA 1979) ("[T]he duty to defend has no roots in the common law. It is purely a statutory or contractual duty.").  And because the policy in this case allows for the consideration of extrinsic evidence – all of which points to no physical damages taking place during the policy period – Atlantic concludes that it has no

14

duty to defend and that summary judgment should be granted. *See Atlantic Cas. Ins. Co. v. Sealtite Roofing & Constr. Co.*, 73 F. Supp. 3d 953, 957 (N.D. Ill. 2014) ("[T]he policy itself expressly allows Atlantic to make a 'determination regarding a defense obligation . . . on evidence or information extrinsic to any complaint or pleading presented to us.'") (citation omitted).

Defendants' response is that, before the policy period lapsed, they had several conversations and business meetings with Legacy to discuss the upcoming roofing project. Defendants claim that these communications took place during the policy period and at least three communications present an issue of fact precluding the entry of summary judgment. First, Defendants state that, on January 20, 2010, Legacy furnished a document entitled "Contract, Programs & Limited 7 Year Warranty," which provided evidence that Legacy was planning to install a roof coating product on Defendants' buildings. [D.E. 37-1]. Second, Defendants allege that Legacy submitted a "Scope of Work" document on February 15, 2010, signaling Legacy's preparation to install a roof coating. And third, Defendants claim that Legacy faxed them a Florida business license on January 6, 2010 as evidence that Legacy was in good standing as a licensed contractor. Because there is ample evidence that Legacy *planned* to install its roofing product during the policy period, Legacy concludes that there is an issue of fact as to whether Atlantic has a duty to defend.

Defendants' response is unhelpful in several respects because it consists of only three and a half pages, three legal citations, and almost no references to the

record.  The response also omits any evidence as to how Legacy's actions fall within the scope of the insurance policy.  Atlantic points out, for example, that the policy only provides coverage for bodily injuries or property damages that occur within the policy period (i.e. from March 17, 2009 to March 17, 2010).  But, Defendants avoid any discussion of the policy language or the arguments presented in Atlantic's motion.  Defendants merely state that Legacy engaged in various sale pitches and composed initial plans to install a roof coating, yet Defendants fail to explain how the alleged conduct allows for coverage under the insurance policy.  That is, each argument presented in the response falls short because none of them show that Legacy committed any "bodily injury or property damage" during the policy period, which is the essential prerequisite for coverage.

Putting aside all those shortcomings, we must address whether the Court can consider extrinsic evidence in determining whether Atlantic has a duty to defend. The duty to defend is generally examined solely by reference to the allegations of the underlying complaint.  *See Feldman v. Imperium Ins. Co.*, 2015 WL 5854153, at *1 (M.D. Fla. Oct. 5, 2015) ("Florida courts typically determine whether an insurer has a duty to defend by comparing the allegations in the underlying complaint to the coverage afforded under the policy.") (citing *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)).  But, Florida law does recognize some limited circumstances where a court may consider evidence extrinsic to the underlying complaint when determining the duty to defend.  *See, e.g., First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 785-87 (11th Cir. 2008).

In *Higgins v. State Farm Fire & Cas. Co.*, the Florida Supreme Court identified "some natural exceptions" to the principal that the obligation to defend is determined solely by the claimant's complaint "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the complaint." *Higgins*, 894 So. 2d at 10 n.2. The Florida District Courts of Appeal have also considered facts outside the underlying complaint to find no duty to defend where the insurer presented uncontroverted evidence of a fact placing a claim outside of coverage. *See Composite Structures, Inc.*, 560 F. App'x at 865 (citing *Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565 (Fla. 1st DCA 2010); *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1103 (Fla. 4th DCA 1995)).[3]

For instance, Florida's Third District has allowed an insurer to rely on extrinsic evidence to argue that "the alleged insured is not in fact an insured under the policy." *Nateman v. Hartford Cas. Ins. Co.,* 544 So. 2d 1026, 1027 (Fla. 3d DCA 1989) (reasoning that "the creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint . . . and as to who is an insured, the facts as they actually exist must be determinative"). Florida's First District has also permitted comparison of the

---

[3]     In *Nationwide Mutual Fire Insurance Co. v. Keen,* Florida's Fourth District Court of Appeal held that an insurer was relieved of the duty to defend "if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage."  658 So. 2d at 1101.  The Eleventh Circuit, in an unpublished decision, has characterized *Keen* as "depart[ing] from the general principle of determining the duty to defend only from the allegations in the complaint." *First Specialty Ins. Corp. v. 633 Partners, Ltd.,* 300 F. App'x 777, 785 (11th Cir. 2008).

underlying complaint to a complaint filed in a prior action, in order to assess the applicability of a "prior-litigation" exclusion. *See Acosta, Inc.,* 39 So. 3d at 575 (holding that "[c]onsideration of the prior complaint was entirely proper . . . because its existence and authenticity was undisputed."). And even the Eleventh Circuit has held that an insurer may consider the date on which an insured provides written notice of a claim, in order to determine whether the insured timely notified the insurer of a claim, because the evidence was "uncontroverted" and because the "date of written notice to the insurance company is not a fact that would normally be alleged in the [underlying] complaint." *Composite Structures, Inc.*, 560 F. App'x at 865-66 (citing *Higgins,* 894 So. 2d at 10 n.2).

However, the Eleventh Circuit has also cautioned that this departure from the general practice in Florida appears only in "exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *See 633 Partners, Ltd.,* 300 F. App'x at 786; *see also Composite Structures, Inc.*, 560 F. App'x at 865 n.2. Thus, "in special circumstances, a court may consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage." *See Stephens v. Mid–Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014). Moreover, "[u]nder Florida law, when there is an inconsistency between the facts and the complaint's allegations, the allegations control in determining the insurers' duty to defend. And when 'extrinsic evidence [is] not uncontroverted or manifestly obvious to all so as to

preclude coverage[,]' it should not be considered in determining whether there is a duty to defend." *Travelers Indem. Co. v. Figg Bridge Engineers, Inc.*, 389 F. Supp. 3d 1060, 1070 (S.D. Fla. 2019) (quoting *Advanced Sys., Inc. v. Gotham Ins. Co.*, 272 So. 3d 523, 527–28 (Fla. 3d DCA 2019) (alterations in original)).

Here, the state court complaint never makes clear as to *when* Defendants suffered property damage as a result of Legacy's actions.  Atlantic claims that every ounce of evidence in the state court case shows that the roofing project began after the policy period lapsed and that Defendants noticeably fail to even dispute this contention in their response.  On the other hand, Defendants assert that the events that took place during the policy period were "contacts with [Legacy] in both sales pitch and planning phases," [D.E. 37 at 2], Legacy's initial "decision to use an incompatible roofing product," *id.* at 3, the submission of documents detailing the scope of the expected work, and the faxing of a Florida business license.

This highlights the most obvious problem with the response in that it not only fails to explain how coverage exists under the policy but also does not even dispute that the roofing project did not begin until after the insurance policy lapsed. That is significant because, in the usual case where an insurer seeks a declaratory judgment on the premise that there is no duty to defend, the aggrieved party can "at least marginally and by reasonable implication," point to some evidence that work began during the policy period or, at the very least, dispute the fact that property damage occurred during the same time frame. *See Klaesen Bros. v. Harbor Ins. Co.*, 410 So. 2d 611, 613 (Fla. 4th DCA 1982) ("The wrongful death complaint alleges (at

least marginally and by reasonable implication) that appellant's conduct in negligently hiring and retaining Pitts, and its vicarious liability for Pitts's acts while in the course and scope of his employment, arose out of the ownership, maintenance or operation of a carnival, and operations necessary or incidental thereto."). Yet, neither exists in this case. There is no evidence of *any* property damage occurring within the policy period and Defendants fail to dispute that any work began before the policy lapsed.

Defendants instead hang their hat on negligent planning and sales pitches that occurred in January and February 2010. But, it is entirely unclear how any of these acts fall within the scope of the insurance policy. There is no policy language to speak of that ties that conduct to trigger coverage. As a result this case is materially different than most because usually there is at least some evidence that coverage could apply and that some work took place that could give to rise to a duty to defend. *See, e.g., Southern Owners Ins. Co. v. Wentworth Constr. Co., LLC*, 2019 WL 8275154, at *10 (S.D. Fla. Dec. 10, 2019) ("The underlying complaint is silent as to the timing or discovery of the damage. However, because it is undisputed that at least some stuccowork transpired during the policy period, the Court is compelled to consider that the underlying complaint "'at least marginally and by reasonable implication,' . . . could be construed to allege that the damage . . . may have begun to occur immediately after installation") (quoting *Trizec Properties, Inc.*, 767 F.2d at 813).

In the usual circumstances, courts give the aggrieved party the benefit of the doubt or otherwise focus solely on the allegations presented in the underlying complaint. *See Auto-Owners Ins. Co. v. Envtl. House Wrap, Inc.*, 2019 WL 3069080, at *8 (M.D. Fla. July 12, 2019) ("[B]ased on the allegations of the Underlying Complaint, the damage could have occurred any time after commencement of construction and before the inspection, thereby potentially including ongoing operations."). But, this is one of those exceptional cases where it is "manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage," and in light of the extrinsic facts presented, Atlantic has no duty to defend given the absence of any evidence or let alone a dispute that Defendants suffered any property damage during the policy period. *Stephens*, 749 F.3d at 1323. That is, even though Defendants failed to include in the underlying action when they suffered property damages, they may not omit a "crucial, undisputed fact in a patent attempt to 'plead into coverage.'" *BBG Design Build, LLC v. S. Owners Ins. Co.*, 2020 WL 4218108, at *3 (11th Cir. July 23, 2020) (citing *Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp.*, 469 F. Supp. 2d 1214, 1220 (S.D. Fla. 2006)).[4]

Lastly, irrespective of whether Legacy acted negligently in "planning" to install a roof coating as Defendants surmise, as a matter of law there is no coverage for these acts in this policy that explicitly provides that "insurance applies to 'bodily

---

[4]     This also does not even consider the question of whether the contract itself gives Atlantic an additional right to consider extrinsic evidence because, as previously mentioned, the contract states that insurer "may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a lawsuit is seeking 'Property damage.'" [D.E. 1-4 at 48].  We leave that question for another day.

injury' and 'property damage' *only* if . . . [t]he 'bodily injury' or 'property damage' occurs during the policy period."   [D.E. 1-4 at 21] (emphasis added).   And Defendants fail to explain how negligent sales pitches, business meetings, and conversations related to the planning of a roofing project constitutes bodily injury or property damage taking place during the policy period.   Defendants have not, in other words, made clear how negligent planning during the policy period allows for coverage when the alleged damage did not occur until after the policy expired.

This position also runs contrary to the general rule in that the date of the actual damage – not the date of the negligent act – is determinative of whether coverage exists under an insurance policy.   *See, e.g., Trizec Properties, Inc.*, 767 F.2d at 812 ("Both parties acknowledge the applicability of the general rule that the event which triggers potential coverage under an occurrence-type policy is the sustaining of *actual damage* by the complaining party and *not the date of the negligent act* or omission which caused the damage.") (emphasis added) (citing cases); *Axis Surplus Ins. Co. v. Contravest Const. Co.*, 921 F. Supp. 2d 1338, 1346 (M.D. Fla. 2012) ("[I]n order to trigger coverage under Axis's policy, 'property damage' must have 'occurred' during the policy period.").   Because Defendants have failed to present any evidence or even raise the possibility that they might have suffered actual damages as a result of Legacy's actions during the policy period, Plaintiff's motion for summary judgment as to its duty to defend should be **GRANTED**.

## 2. *Whether Atlantic Should be Reimbursed for Fees and Costs*

Having determined that Atlantic has no duty to defend Legacy in the underlying action, the next question is whether Atlantic should be reimbursed for fees and costs.[5]  The policy states that, when there is no duty to defend, the insurer is entitled to seek reimbursement for all sums paid in defense of the insured:

> Where there is no coverage under this policy, there is no duty to defend any insured.  We are entitled to all rights of reimbursement from you or any insured or indemnitee for sums paid under this policy if it is determined that there is no coverage under the terms, conditions or exclusions of this policy.

> Our determination regarding a defense obligation under this policy may be made on evidence or information extrinsic to any complaint or pleading presented to us.

> We have the right but not the duty to defend.  The preceding sentence only applies to those qualifying as an additional insured by way of an additional insured endorsement.

[D.E. 1-4 at 45].

Atlantic's argument is well taken because an insured is "entitled under Florida law to seek reimbursement of its defense costs now that it has been determined that it never owed a duty to defend." *James River Ins. Co. v. Arlington Pebble Creek, LLC*, 188 F. Supp. 3d 1246, 1262 (N.D. Fla. 2016); *see also Travelers Indem. Co.*, 389 F. Supp. 3d 1060, 1081 (S.D. Fla. 2019) ("Florida law requires nothing more from Plaintiffs to be reimbursed for defense-related payments determined to be outside the scope of Plaintiffs' duty to defend."). Defendants offer no argument in response to Atlantic's request for fees and costs.  And Defendants

---

[5] To award any relief, Atlantic will, of course, have to file a supplemental motion for fees and costs that sets forth the amounts reasonably expended in the underlying litigation.

23

probably did so for good reason because the contract states that reimbursement is allowed if there is no duty to defend.

Because the contract is clear and Florida law allows for an insurer to recover the costs of defending a case if it is later determined that there is no duty to defend, Atlantic's motion should be **GRANTED** and it should be entitled to a reimbursement of the sums paid in defending the underlying action.  *See Wendy's of N.E. Florida, Inc. v. Vandergriff,* 865 So. 2d 520, 522 (Fla 1st DCA 2003) ("Under Colony *Insurance,* an insurer is entitled to reimbursement for all costs and fees incurred in defending the underlying suit if the defense was initially provided under an expressed reservation of rights providing for attorney's fees and costs if the insurer prevailed, and if the insured accepts such defense."); *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So. 2d 1034, 1039 (Fla. 1st DCA 2000) ("Having accepted Colony's offer of a defense with a reservation of the right to seek reimbursement, G & E ought in fairness make Colony whole, now that it has been judicially determined that no duty to defend ever existed.").

### 3.  *Whether Atlantic has a Duty to Indemnify*

The final question is whether Atlantic has a duty to indemnify.  As mentioned earlier, [a]n insurer's duty to defend its insured is separate from and broader than its duty to indemnify the insured." *Hale v. State Farm Fla. Ins. Co.,* 51 So.3d 1169, 1171 (Fla. 4th DCA 2010).  This means that a finding of no duty to defend, as a matter of Florida law, necessarily includes a finding of no duty to indemnify. *See Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.,* 657 F.3d 1135, 1146

24

(11th Cir. 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.") (quoting *Philadelphia Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc.,* 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009)) (internal quotation marks omitted)).  Because Atlantic has no duty to defend the underlying action, it also has no duty to indemnify and therefore Plaintiff's motion for summary judgment should be **GRANTED** in all respects.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**.  Judgment should be entered in Plaintiff's favor following resolution of the amount of fees and costs that should be reimbursed.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 27th day of

July, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge