# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 19-22043-Civ-WILLIAMS/TORRES

ATLANTIC CASUALTY INSURANCE CO,

    Plaintiff,

v.

LEGACY ROOFING OF FL/AHEAD GENERAL
CONTRACTORS & RESTORATION, LLC
RIVAS FAMILY ENTERPRISES, INC. and
DEPENDABLE WAREHOUSING & DISTRIBUTION, INC.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION FOR FEES AND COSTS

This matter is before the Court on Atlantic Casualty Insurance Company's ("Atlantic" or "Plaintiff") motion for fees and costs against Legacy Roofing of FL/Ahead General Contractors & Restoration, LLC ("Legacy"). [D.E. 48]. No response filed in opposition to Plaintiff's motion and the time to do so has passed. Therefore, Plaintiff's motion is now ripe for disposition. After careful review of the motion, which is unopposed and may be granted by default under S.D. Fla. Local R. 7.1, Plaintiff's motion for fees and costs should be **GRANTED**.[1]

---

[1] On October 30, 2020, the Honorable Kathleen Williams referred Plaintiff's motion to the undersigned Magistrate Judge for disposition. [D.E. 49].

## I.  BACKGROUND

On June 30, 2015, the defendants in this case filed an action in Florida state court, seeking damages resulting from the installation of a roofing sealant. Defendants alleged that Legacy installed a sealant that began "eating away" at a commercial roof.  [D.E. 1-1 at 6].  Thus, defendants filed a single count of negligence against Legacy, alleging improper installation of the roofing sealant and seeking damages for a roof replacement.

Based on these allegations, Plaintiff agreed to defend Legacy pursuant to a reservation of rights clause included in an insurance policy.[2]  This clause reserved Plaintiff's right to seek reimbursement against Legacy for all fees and costs incurred in defense of the state court action if it was later determined that no coverage existed under the relevant insurance policy.  On May 21, 2019, Plaintiff filed this action seeking a declaratory judgment, arguing that no coverage existed under the policy for the claims presented in the underlying state court action.  And because no coverage existed, Plaintiff concluded that summary judgment should be granted and that it should be entitled to the reimbursement of all fees and costs incurred in defending Legacy.

On July 27, 2020, the undersigned issued a Report and Recommendation (the "R&R"), recommending that Plaintiff's motion for summary judgment be granted

---

[2]   Atlantic issued a Commercial General Liability Policy to Legacy as the named insured with a policy period from March 17, 2009 to March 17, 2010.  [D.E. 1-4]. The policy includes coverage for "bodily injury" and "property damage" caused by an "occurrence" and promises to defend the insured subject to certain conditions.

with respect to all claims and that Plaintiff be entitled to a reimbursement of the sums paid in defending the underlying action. The Court adopted the R&R on August 14, 2020 [D.E. 43] and, one month later, Plaintiff filed a motion for fees and costs. [D.E. 45]. The court denied without prejudice that motion because it did not include, among other things, the required invoices and billing records. Plaintiff then filed an amended motion that is now ripe for disposition. [D.E. 48].

## II.     ANALYSIS

Plaintiff's motion seeks to recover $48,239.53 in fees and costs. This total includes $41,300 in fees, and $6,939.53 in costs.[3] Because the amount sought is reasonable and Legacy failed to file a response in opposition, Plaintiff concludes that the motion for fees and costs should be granted in all respects.[4]

### A.     *The Lodestar Method*

In determining an appropriate fee award, we employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We

---

[3] Plaintiff separated the cost figure into amounts that Plaintiff paid directly and those expenses that its lawyers paid on its behalf. We have added those amounts together to reach the total stated above.

[4] Plaintiff's entitlement to fees and costs is because of a reservation of rights clause provided in the underlying insurance contract between Atlantic and Legacy. [D.E. 1-4]; *see also Travelers Indem. Co.*, 389 F. Supp. 3d 1060, 1081 (S.D. Fla. 2019) ("Florida law requires nothing more from Plaintiffs to be reimbursed for defense-related payments determined to be outside the scope of Plaintiffs' duty to defend.").

3

have established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id.*

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302. Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.* at 1304 (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999). Courts, however, have considerable discretion when determining whether a party to a case should

4

receive a fee award. *See Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.").

### B. *Reasonable Hourly Rate*

In computing the lodestar, the first step is to determine the reasonable hourly rate, defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The

relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted).

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.* The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.").[5] Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees

---

[5]   The 12 *Johnson* factors are as follows:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974).

and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

The law firm that represented Plaintiff billed at a *blended* hourly rate of $160 for associates and partners. Plaintiff asserts that this is a reasonable rate because it falls within the possible range of fees that the Court can award for attorneys with a substantial amount of experience in litigating matters where there are questions as to whether there is a duty to defend or indemnify.

Plaintiff hired three lawyers and one paralegal to work on this case. This includes Albert Blair ("Mr. Blair"), Gerardo Fernandez-Davila ("Mr. Fernandez-Davila"), Samuel Spinner ("Mr. Spinner"), and Georgia Johnston ("Ms. Johnston"). Mr. Blair and Mr. Fernandez-Davila billed at a rate that fluctuated between $80-$160, whereas Mr. Spinner and Ms. Johnston billed at a constant rate of $160 and $90, respectively. Mr. Blair is a partner with twenty years of experience in construction litigation, contract disputes, insurance coverage, and many other matters in both state and federal court. Mr. Fernandez-Davila is a seventh year associate that focuses on many of the same matters. And Mr. Spinner is a fifth year associate who focuses on appellate litigation.[6]

In determining a reasonable hourly rate, it is important to remember that this is an insurance case where many of the questions presented did not present complex issues of law. *See St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.,* 2019 WL

---

[6] Plaintiff never clarified the number of years that Ms. Johnston has worked as a paralegal.

7905013, at *4 (S.D. Fla. Oct. 10, 2019) ("The rate requested should be reduced even further because this was merely an insurance case – meaning it did not involve highly complex issues of law that would require a $500 per hour junior partner.") (citing *Beach Bars USA, LLC v. Indem. Ins. Corp. of DC*, 2015 WL 11422318, at *3 (S.D. Fla. May 6, 2015), *Report and Recommendation adopted*, 2015 WL 11401351 (S.D. Fla. July 31, 2015) ("[F]ee awards in insurance coverage cases are materially different from awards in complex commercial litigation, for instance.")). The rates for Plaintiff's lawyers should therefore reflect a reduced amount because $350 per hour is generally accepted as the most that can be awarded for these types of cases. *See Beach Bars USA, LLC*, 2015 WL 11422318, at *4 ("[W]e find that based upon our expertise in [insurance litigation] a $350.00 hourly rate is the most that can be awarded . . . for this type of case. Arguably, even that rate may be on the high side");

In light of this limitation, the hourly rates for each of Plaintiff's lawyers are commensurate with their individual levels of experience. In fact, if anything warrants an adjustment, it would be an *increase* in Mr. Blair's rates because he is a lawyer with twenty years of litigation experience. *See, e.g.*, *CC–Aventura, Inc. v. Weitz Co., LLC,* 2008 WL 276057 (S.D. Fla. Jan. 31, 2008) (holding as reasonable an eighth-year associate hourly rate of $400 and a first-year associate hourly rate of $200); *CBS Broadcasting, Inc. v. Browning,* 2007 WL 2850527 (S.D. Fla. Sept. 21, 2007) (holding that a reasonable hourly rate for a partner is $350-$550, for a seventh-year associate is $375, for a fourth-year associate is $325-350, and for a

8

second-year associate at $175). The Court will not, however, increase Mr. Blair's rates *sua sponte* because that is an amount agreed to between him and his client and – while it might be lower than the rate of a lawyer with his level of experience – it is not excessive.

The rate for Ms. Johnston is also appropriate because $90 per hour is within the range of reasonableness for a paralegal working on an insurance case. *See Freed By Freed v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2005 WL 8156037, at *6 (S.D. Fla. Aug. 24, 2005) ("[T]he Court considers $75.00 a reasonable hourly rate for the two paralegals"); *see also Kotchman v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 4124845, at *2 (M.D. Fla. Sept. 18, 2017) ("$ 80 per hour for paralegals' time is ... a reasonable hourly rate.") (citing *Rynd v. Nat'l Mut. Fire Ins. Co.*, 2012 WL 939387, at *1 (M.D. Fla. Jan. 25, 2012), *Report and Recommendation adopted*, 2012 WL 939247 (M.D. Fla. Mar. 20, 2012); *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377 (M.D. Fla. 2010) (reducing a paralegal's hourly rate from $ 110 to $ 65 per hour in an insurance bad faith case)). While Plaintiff did not give the Court much information on her experience, it is clear that she is a competent paralegal based on the tasks she performed. Thus, there is no need to modify the hourly rates for any of the timekeepers who worked on this case.

### C.     *Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended in the litigation. The award must exclude

9

compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel.*" *A.C.L.U. of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award. *See A.C.L.U. of Georgia*, 168 F.3d at 428. If the fee applicant fails to exercise required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.* at 428. As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303. Accordingly, it is "perfectly proper to award attorney's fees based solely on affidavits in the record." *Id.* at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger,* 10 F.3d at 783). A court may not, however, do both. *Id.* at 1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district

court does not doubly-discount the requested hours"). In deciding between the two options available to the Court, an hour-by-hour approach is sometimes preferable while at other times the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger*, 10 F.3d at 783 (holding that where the billing record is voluminous, "the district court need not engage in an hour-by-hour analysis[;r]ather, . . . it may [] reduce [the hours devoted to litigation] in gross if a review of the resubmitted fee request warrants such a reduction") (emphasis added)). "In such cases, an across-the-board cut may be appropriate, as long as a court "articulate[s] [its] reasons for selecting specific percentage reductions." *Roy v. Bd. of Cty. Comm'rs, Walton Cty., Fla.*, 2012 WL 8013976, at \*4 (N.D. Fla. Nov. 1, 2012), *Report and Recommendation adopted*, 2013 WL 1883247 (N.D. Fla. May 6, 2013) (quoting *Loranger*, 10 F.3d at 783).

Here, the legal professionals that worked on this case expended the following amount of time: Mr. Blair – 53.6 hours, Mr. Fernandez-Davila – 202.3 hours, Mr. Spinner – 6.4 hours, and Ms. Johnston – 9.0 hours. Plaintiff claims that these hours were appropriate because it included, among other things, research tasks, discovery responses, motion practice, depositions, and site inspections. While Plaintiff could have provided additional reasons in support of its position that these hours were reasonably expended, we cannot find any time entries that appear excessive based on the billing records that Plaintiff attached. The tasks performed go hand in hand with the time expended and they also reflect the amount of time that one would

11

expect from each legal professional that billed on this case. We therefore conclude that the number of hours spent on this case was reasonable, that no reduction is needed, and that Plaintiff should be entitled to $41,300 in fees.

### D. *Costs and Expenses*

The final issue is Plaintiff's request for $6,939.53 in costs. These costs include, for the most part, expenses for experts/consultants, court reporters, and the service of several subpoenas. While a cost award is generally limited to the expenses enumerated in 28 U.S.C. § 1920, this case is materially different because of a reservation of rights agreement between Atlantic and Legacy. [D.E. 1-3]. And that agreement allows for the recovery of Atlantic's defense costs if it is later determined that there is no duty to defend. *Id.*

These costs are recoverable under Florida law because – where an insurer reserves its right to seek reimbursement and the insured accepts the defense – an insurer "is entitled to reimbursement now that it has been determined that it was never under a duty to defend." *James River Ins. Co. v. Arlington Pebble Creek, LLC*, 188 F. Supp. 3d 1246, 1261 (N.D. Fla. 2016) (citing *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So. 2d 1034, 1039 (Fla. 1st DCA 2000) ("Colony timely and expressly reserved the right to seek reimbursement of the costs of defending clearly uncovered claims, which it consistently identified as such. Having accepted Colony's offer of a defense with a reservation of the right to seek reimbursement, G & E ought in fairness make Colony whole, now that it has been judicially determined

12

that no duty to defend ever existed."); *Jim Black & Associates, Inc. v. Transcon. Ins. Co.*, 932 So. 2d 516, 518 (Fla. 2d DCA 2006) ("Now that it has been determined that Transcontinental never had a duty to defend, Transcontinental is entitled to reimbursement.")). And based on our review of the costs requested, none are unreasonable based on the length of this case and the issues presented. Plaintiff's motion for $6,939.53 in costs should therefore be **GRANTED** with a total fee and cost award equaling $48,239.53.

### III. *CONCLUSION*

Based upon a thorough review of Plaintiff's motion for fees and costs [D.E. 48], Plaintiff's motion should be **GRANTED**:

    A.    Plaintiff should recover $41,300 in fees.

    B.    Plaintiff should recover $6,939.53 in costs.

    C.    Plaintiff should recover a total fee and cost award of $48,239.53.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v.*

*Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 16th day of November, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge